■ SCHOMANN ENTERTAINMENT CORPORATION, Appellant, v CHARLES W. FRIBLEY et al., Respondents.—Casey, J. Appeal from an order of the Supreme Court (Ryan, Jr., J.), entered April 26, 1990 in Schenectady County, which, *inter alia,* granted defendants' motion for summary judgment dismissing the complaint.

Defendants are the shareholders of Newport Cablevision, Inc., which owns and operates a cable television franchise in

Newport, Vermont. Defendants contacted plaintiff, the operator of several cable television systems in the northeast, regarding the sale of Newport. Negotiations began in February 1987 and resulted in a letter dated May 15, 1987 (hereinafter the letter) to defendants which set forth "the principal terms and conditions pursuant to which [plaintiff] is willing to purchase 100% of the voting stock and rights of Newport Cablevision, Inc." The purchase price was fixed at $4,000,000 to be "reduced at closing by an amount to be agreed upon to be held in escrow for liabilities and reasons to be agreed upon". The letter provided that defendants would "warrant matters normal and customary in transactions of this nature", with a brief, nonexclusive listing of the warranties to be included. There were also several conditions placed upon "[c]onsummation of the transaction contemplated in this letter", including "[t]he completion and signing of a definitive agreement of purchase and sale with appropriate indemnifications and reserves for liabilities of the corporation and such other terms and conditions as [the] parties may agree upon".

Defendants signed the letter, but refused to execute the proposed stock purchase agreement sent to them at the end of June 1987 by plaintiff's attorney. Plaintiff commenced this action for specific performance and, after issue had been joined and the parties had been examined, defendants moved for summary judgment dismissing the complaint. Supreme Court granted the motion, resulting in this appeal by plaintiff.

Plaintiff claims that the letter constituted a purchase offer containing all of the material elements, and that defendants' acceptance resulted in a binding contract. Where the written exchanges between parties clearly establish that the agreement was to take effect only after it had been reduced to a formal written document signed by both parties, there is no contract as a matter of law (*EDP Med. Computer Sys. v Sears, Roebuck & Co.*, 149 AD2d 563, *lv denied* 74 NY2d 873; *Tebbutt v Niagara Mohawk Power Corp.*, 124 AD2d 266; *see, Matter of Municipal Consultants & Publishers v Town of Ramapo*, 47 NY2d 144, 149). In the case at bar, the letter expressly provides that consummation of the transaction is conditioned upon the completion and signing of a definitive agreement of purchase and sale. Notwithstanding this clear expression of intent, plaintiff maintains that this condition had nothing to do with the effectiveness of the agreement embodied in the letter, and could be construed as a mere legal formality to be taken care of at the closing. Thus, according to plaintiff, a question of fact was raised as to the parties' intent.

Plaintiff's argument conflicts not only with the clear language of the letter, but also with the language of the proposed stock purchase agreement, which provides that "[t]his Agreement constitutes the Shareholder's valid and binding obligation". A comparison of the two documents also supports the conclusion that the parties intended the definitive agreement of purchase and sale to be the binding contract, not the letter. The proposed agreement consists of slightly more than 23 pages and spells out the terms and conditions in detail. The letter consists of just over two pages and contains a brief outline of many, but not all, of the terms and conditions ultimately put into the proposed agreement, and the letter contains several references to matters to be agreed upon. One significant matter to be agreed upon was the amount to be held in escrow for liabilities. Plaintiff contends that the parties had agreed to the need for such a holdback and that the amount thereof was not a material element and could be determined by reference to objective criteria, such as customary practice in the industry. The amount of the holdback specified in the proposed agreement amounted to 10% of the purchase price, hardly an immaterial matter, and there is nothing in the letter to indicate that the parties were even aware of any objective criteria for determining the amount of holdback *(see, Cobble Hill Nursing Home v Henry & Warren Corp.,* 74 NY2d 475). Nor did plaintiff present any proof in evidentiary form to show that this element could be determined objectively.

Irrespective of whether the letter was so indefinite as to be unenforcible *(compare, Martin Delicatessen v Schumacher,* 52 NY2d 105, *with Cobble Hill Nursing Home v Henry & Warren Corp., supra),* we are of the view that the express conditioning of the transaction on the completion and signing of a definitive agreement and the stated binding effect of the proposed agreement, when juxtaposed to the specificity of the proposed agreement and indefiniteness of the letter, clearly manifest the parties' intent not to be bound until the execution of "a definitive agreement of purchase and sale". In these circumstances, the question of whether the letter satisfied the requirements of UCC 8-319 is irrelevant *(see, APS Food Sys. v Ward Foods,* 70 AD2d 483, 486). We find no factual issues precluding summary judgment. Supreme Court's order should, therefore, be affirmed.

Order affirmed, with costs. Kane, J. P., Casey, Mikoll, Yesawich, Jr., and Mercure, JJ., concur.